☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>TWO CELLULAR TELEPHONES SEIZED ON OCTOBER )<br>28, 2024, CURRENTLY LOCATED AT BROWN DEER )<br>POLICE DEPARTMENT IN BROWN DEER, WISCONSIN ) | Case No. 25-806M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 2/18/2025_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     xx☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 2/4/2025 @ 10:04 a.m._____

*Judge's signature*

City and state:      Milwaukee, WI_____          Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**ATTACHMENT A**</u>

1.  The property to be searched is one (1) Black iPhone (unknown model) with an Apple sticker in a clear case and one (1) white iPhone (unknown model) in a black case, both seized on October 28, 2024, hereinafter the "Devices." The Devices are currently located at Brown Deer Police Department in Brown Deer, Wisconsin and are pictured below.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

 

 

## ATTACHMENT B

1.      All records or information on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Section 2312 (Transportation of Stolen Vehicles), Title 18 and Title 18, United States Code, Section 1028A (aggravated identity theft) (the "TARGET OFFENSES") from **March 2024 to October 28, 2024**, including:

      a.   any activity related to Hertz Car Rental transactions;

      b.   information related to the sale, transportation, and/or storage of Hertz vehicles including contacts, communications, addresses and transactions related to such activities;

      c.   information and communications pertaining to compromising Hertz "Gold Member" user profiles;

      d.   list of contacts to include names and telephone numbers;

      e.   communications and methods involving the counterfeiting of driver's licenses, credit cards, and other forms of identification and payments;

      f.   all bank records, checks, credit card bills, account information, and other financial records.

2.      All records or information of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, text messages, messaging apps, usernames passwords, photos, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

Case 2:25-mj-00806-NJ    Filed 02/04/25    Page 5 of 23    Document 1

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 25-806M(NJ) |
| TWO CELLULAR TELEPHONES SEIZED ON OCTOBER 28, 2024, CURRENTLY LOCATED AT BROWN DEER POLICE DEPARTMENT IN BROWN DEER, WISCONSIN | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the **Eastern** District of **Wisconsin** , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §2312 | Transportation of Stolen Vehicles |
| 18 U.S.C. §1028A | Aggravated Identity Theft |

The application is based on these facts:

Please see Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Caleb Jurchisin, Special Agent - FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**telephone** *(specify reliable electronic means).*

Date: 2/4/2025

_____
*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Caleb Jurchisin, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.  There is probable cause to believe that cellular telephones will contain evidence, fruit and instrumentalities of violations of Title 18, United States Code, Section 2312 (Transportation of Stolen Vehicles) and Title 18, United States Code, Section 1028A (aggravated identity theft), as described in Attachment B (the "TARGET OFFENSES").

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since June of 2024. I am currently assigned to the Minneapolis Division in Brooklyn Center, MN. I have gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state, and federal law enforcement agencies. As part of my current duties, I conduct investigations of violent crimes occurring in Minnesota and throughout the United States. These investigations have included the use of various law enforcement techniques and the execution of various search, seizure, and arrest warrants.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is a Black iPhone (unknown model) with an Apple sticker in a clear case and a white iPhone (unknown model) in a black case, seized on October 28, 2024, hereinafter the "Devices."  The Devices are currently located at Brown Deer Police Department, in Brown Deer, Wisconsin and have been powered on and in "Airplane Mode" to prevent their access and to protect the data on each phone.

5.      The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.      On September 26, 2024, Federal Bureau of Investigation (FBI) was made aware of twenty-one vehicles from Hertz Car Rental (MSP airport location) that were rented fraudulently and subsequently stolen between March and September 2024. The rentals were carried out by accessing Hertz "Gold Members" online accounts and using counterfeited documents including customer IDs and credit cards.

7.      One of the fraudulently rented vehicles was recovered at an apartment complex in Brooklyn Park, MN and upon inspection, a Hertz employee found numerous fraudulent driver's licenses, credit cards, and uncashed checks in a box located in the vehicle. An image of these documents is shown below in Figure 1. One of the reported stolen vehicles was recovered by the New Jersey Port Authority in Hudson County, New Jersey. The vehicle was in a shipping container en route to Africa.

*Figure 1*



8.   FBI-Minneapolis submitted images pictured in figure 1 for facial recognition. A match was returned that linked the images in several of the fraudulent IDs to a female identified as FANTA KABA, with date of birth X/XX/1995. Law enforcement database checks revealed

KABA's potential last known address of 85 Riverside Avenue, #A373, Yonkers, NY 10701. Law enforcement database checks also revealed ongoing investigations in which KABA was arrested by Brown Deer Police Department on October 28, 2024, for Forgery Uttering and Identity Theft and on September 9, 2022, by Piedmont Triad International Airport Police for Financial Card Fraud and Possession of Fraudulent ID. Further details of each investigation are described herein.

### *Arrest of Fanta Kaba by Piedmont Triad International Airport Police*

9.    While monitoring surveillance cameras on September 9, 2022, at the Hertz Car Rental counter at Piedmont Triad International Airport, located in Greensboro, North Carolina, an officer observed a male and female at the counter for what appeared to be an extended amount of time. The officer approached the counter, at which time the employee took him to the back office where she explained that the female customer, later identified as KABA, showed a driver's license that the True ID scanner registered as fraudulent. The name on the Pennsylvania driver's license was "Naturi Cole" date of birth X/XX/1992. On this Pennsylvania Driver's License was a photograph of KABA. Piedmont Airport Police Communications also ran a check of the ID which showed the driver's license as fraudulent. The credit card used to attempt the vehicle rental was a Mastercard with the name "Naturi Cole".

10.    KABA was subsequently arrested for Financial Card Fraud and Possession of Fraudulent ID. The officer escorted KABA to a private area inside the police department. KABA was described as "being uncooperative and not answering any questions." When officers asked what her business was at the airport, she did not answer. The police report also noted that it appeared KABA had been on her phone via earbuds communicating with someone during the interaction with the Hertz employee and while being questioned by police. After some time, she finally identified herself as Fanta Kaba and that she was from New York. KABA was then

transported to the Guilford County Jail where her cell phone was seized along with a small bag that contained an additional Mastercard with the name "Naturi Cole".

### *Arrest of Fanta Kaba by Brown Deer Police*

11.     On October 28, 2024, Brown Deer Police Department responded to Tri City National Bank, 4295 W Bradley Road, in the Village of Brown Deer, Milwaukee County, state of Wisconsin, for a fraud complaint. The bank manager provided information that KABA opened a fraudulent checking account using the name "Seema Naran Patel" on October 4, 2024. KABA provided employees with a Pennsylvania Driver's License for Seema Naran Patel with a date of birth X/XX/1978 and address of XXXX Cindy Lane, Warrington, PA 18976. On this Pennsylvania Driver's License was a photograph of KABA. On October 18, 2024, KABA deposited a United States Treasury check written out to Seema N Patel for $230,378.84 into the checking account she had opened.

12.     The bank manager also informed Brown Deer Police that KABA conducted the same act at another Tri City National Bank location at 250 W Holt Avenue in the city of Milwaukee. On October 3, 2024, KABA opened a checking account using the name "Rose Chehebar Cowen". KABA provided bank employees with a New York State Driver's License for Rose Chehebar Cowen with a date of birth X/XX/1995 and address of XXXX E. 3rd Street, Brooklyn, NY 11223. On the New York State Driver's License was the same photograph of KABA that was on the Pennsylvania Driver's License. On October 18, 2024, KABA added a male subject, "Elliott J Chehebar" to the checking account stating he was her brother.  On October 25, 2024, a United States Treasury Check written out to Elliott J Chehebar and Rose Cowen for $260,726.60 was deposited into the checking account.

13.     On October 28, 2024, KABA entered the Brown Deer Tri City National Bank location and attempted to pick up the debit card associated with the checking account she had opened in the name of Seema Naran Patel. When the employee asked for her identification card, KABA provided a Connecticut Driver's License bearing the name "Karen Ann Sabol". While she was speaking with the bank employee, KABA was on her cell phone speaking with an unknown party or parties.

14.     Due to several red flags indicating fraudulent activity, the account had been closed and Brown Deer Police were contacted while KABA was inside the bank. KABA was later arrested for forgery uttering and five counts of identity theft. When searching KABA incident to arrest, three additional driver's licenses were found on her person. All of the fake driver's licenses had the same photograph of KABA. Brown Deer Police also seized two cell phones that were in KABA's possession. One was a black iPhone (unknown model) with an Apple sticker in a clear case and the other was a white iPhone (unknown model) in a black case (the Subject Phones).

15.     On October 30, 2024, Brown Deer Police interviewed SEEMA PATEL (the alias KABA used to open the checking account at the Brown Deer location). PATEL stated that she had not lost her wallet or been the victim of credit card fraud, however she is a member of LifeLock and received two separate alerts on September 28, 2024, and October 4, 2024, notifying her that someone was attempting to open bank accounts in her name. PATEL responded stating it was not her. PATEL explained to Brown Deer Police she works in hotel management and owns businesses and that she is owed an IRS refund after she had an issue with her taxes. PATEL stated that the refund was significantly larger than in past years and said that she had recently reached out to her accountant to see when the check would be arriving. PATEL did not have any tracking information for the check and was unaware it had been stolen and/or deposited.

## TECHNICAL TERMS

16.     Based on my training and experience, I use the following technical terms to
convey the following meanings:

    a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular
telephone) is a handheld wireless device used for voice and data communication
through radio signals.  These telephones send signals through networks of
transmitter/receivers, enabling communication with other wireless telephones or
traditional "land line" telephones.  A wireless telephone usually contains a "call
log," which records the telephone number, date, and time of calls made to and
from the phone.  In addition to enabling voice communications, wireless
telephones offer a broad range of capabilities.  These capabilities include: storing
names and phone numbers in electronic "address books;" sending, receiving, and
storing text messages and e-mail; taking, sending, receiving, and storing still
photographs and moving video; storing and playing back audio files; storing
dates, appointments, and other information on personal calendars; and accessing
and downloading information from the Internet.  Wireless telephones may also
include global positioning system ("GPS") technology for determining the
location of the device.

    b.  Digital camera:  A digital camera is a camera that records pictures as digital
picture files, rather than by using photographic film.  Digital cameras use a
variety of fixed and removable storage media to store their recorded images.
Images can usually be retrieved by connecting the camera to a computer or by
connecting the removable storage medium to a separate reader.  Removable

storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When

a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.   Pager:  A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network.  Some pagers enable the user to send, as well as receive, text messages.

h.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17.   Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

19.     There is probable cause to believe that things that things that were once stored on the Device may still be stored there, for at least the following reasons:

    a.  Based on my knowledge, training and experience, I I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few

Case 2:25-mj-00806-NJ     Filed 02/04/25     Page 17 of 23     Document 1

examples, this forensic evidence can take the form of operating system
configurations, artifacts from operating system or application operation, file
system data structures, and virtual memory "swap" or paging files. Computer
users typically do not erase or delete this evidence, because special software is
typically required for that task. However, it is technically possible to delete this
information.

d. Similarly, files that have been viewed via the Internet are sometimes
automatically downloaded into a temporary Internet directory or "cache."

20.    *Forensic evidence.*  As further described in Attachment B, this application seeks
permission to locate not only electronically stored information that might serve as direct
evidence of the crimes described on the warrant, but also forensic evidence that establishes how
the device was used, the purpose of its use, who used it, and when. In my training and
experience, examining data stored on devices of this type-iPhones-can uncover, among other
things, evidence that reveals or suggests who possessed or used the device. This "user
attribution" evidence is analogous to the search for "indicia of occupancy" while executing a
search warrant at a residence.

a. Data on the storage medium can provide evidence of a file that was once on the
storage medium but has since been deleted or edited, or of a deleted portion of a
file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the
device. This "user attribution" evidence is analogous to the search for "indicia of
occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the

physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**<u>CONCLUSION</u>**

23.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## ATTACHMENT A

1.       The property to be searched is one (1) Black iPhone (unknown model) with an Apple sticker in a clear case and one (1) white iPhone (unknown model) in a black case, both seized on October 28, 2024, hereinafter the "Devices." The Devices are currently located at Brown Deer Police Department in Brown Deer, Wisconsin and are pictured below.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

 

 

**ATTACHMENT B**

1.      All records or information on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Section 2312 (Transportation of Stolen Vehicles), Title 18 and Title 18, United States Code, Section 1028A (aggravated identity theft) (the "TARGET OFFENSES") from **March 2024 to October 28, 2024**, including:

      a.   any activity related to Hertz Car Rental transactions;

      b.   information related to the sale, transportation, and/or storage of Hertz vehicles including contacts, communications, addresses and transactions related to such activities;

      c.   information and communications pertaining to compromising Hertz "Gold Member" user profiles;

      d.   list of contacts to include names and telephone numbers;

      e.   communications and methods involving the counterfeiting of driver's licenses, credit cards, and other forms of identification and payments;

      f.   all bank records, checks, credit card bills, account information, and other financial records.

2.      All records or information of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, text messages, messaging apps, usernames passwords, photos, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

Case 2:25-mj-00806-NJ     Filed 02/04/25     Page 22 of 23     Document 1

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.